UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

PAUL F. WEINBAUM

    Plaintiffs

v.                                                                                            CIV 03-01043 RB/LAM

LAS CRUCES PUBLIC SCHOOLS;
CHARLES DAVIS, LEONEL BRISENO,
GENE GANT, JOHN SCHWEBKE,
SHARON WOODEN as School Board Members
Of Las Cruces Public Schools

    Defendants.

---

## PLAINTIFF'S FINDINGS AND CONCLUSIONS OF LAW

These findings and conclusions of law will be use to support the Plaintiff's claim to privileges of the First Amendment at the trial..

    **Reasonable Observer**: "Today's proponents of the endorsement test all agree that we should attribute to the observer knowledge that the cross is a religious symbol." *Capital Square*, Lexis, page 17, second paragraph, line 6.

    **Coercion Test**: 1992, Justice Anthony Kennedy, Lee v. Weisman. "At a minimum, the Constitution guarantees that government may not coerce anyone to support or participate in religion or its exercise, or otherwise act in a way which establishes a state religion or religious faith, or tends to do so."

    **Endorsement Test**: "Endorsement" connotes an expression for demonstration of approval or support. "Endorsement" is equated with "promotion" or " favoritism." Lynch, 1984, Justice O'Connor, …through government endorsement…



1

"Endorsement sends a message to non-adherents that they are outsiders, not full members of the political community, and an accompanying message to adherents that they are insiders, favored members of the political community."

**Lemon Test**: 1971, Lemon v. Kurtzman.

To withstand Lemon scrutiny, the government conduct must:

1. Have a secular purpose.

2. Must have a principal or primary effect that does not advance or inhibit religion, and

3. Cannot foster an excessive government entanglement with religion.

1. **VEHICLES**. The Las Cruces Public Schools use a sunburst with fourteen points enclosing three free-standing Latin crosses with the center cross taller and larger than the two flanking crosses on School District maintenance vehicles. These free standing Latin crosses can be observed at Christian schools and various Christian venues around the city and public school district. Surrounding the sunburst are the words, "For Official Use Only", and those words are surrounded by "Las Cruces Public Schools". These symbols are permanently attached. (Court-Ordered brief, Doc. 116, Exhibit 4)

Las Cruces Public Schools Procedure #424, Religion in the Schools, paragraph 'C.' Religious Symbols. "Definition: A religious symbol is any object which portrays or represents a religious belief. A religious symbol can also be an object which is so closely associated with religion(s) or with the celebration of a religious holiday that it is commonly perceived as being of a religious nature. Paragraph 'F.' Proselytizing: 1. "...school district staff shall not proselytize..."

*Capitol Square, (Lexis) page 20:* "...the Latin cross...is the principal symbol of Christianity around the world...(the) display of the cross...could not reasonably be taken

2

to have any secular point."

*Capitol Square, (Lexis) page 22*: "Indeed, the Latin cross is identifiable as a symbol of a particular religion, that of Christianity, and, further, as a symbol of particular denominations within Christianity." *Capitol Square, et al v. Pinetta, et al, 515 U.S. 752; 115 S. Ct. 2440; 132 L. Ed. 2d 650; 1995 U.S. Lexis 4465.*

The Establishment Clause, "at the very least, prohibits government from appearing to take a position on questions of religious belief or from 'making adherence to a religion relevant in any way to a person's standing in the political community.'" *County of Allegheny v. American Civil Liberties Union, [2466] Greater Pittsburgh Chapter, 492 U.S. 573, 593-594, 106 L. Ed. 2d 472, 109 S. Ct. 3086 (1989), quoting Lynch v. Donnelly, 465 U.S. 668, 687, 79 L. Ed. 2d 604, 104 S. Ct. 1355 (1984).*

From *Capitol Square, (Lexis) page 25*, and *Lehman v. Shaker Heights, 418 U.S. 298, 41 L. Ed. 2d 770, 94 S. Ct. 2714 (1974)*, all political signs on public vehicles were found to be unconstitutional. Therefore, it can only be reasonably presumed that religious signs indicating an endorsement of religion by the Las Cruces Public Schools Board of Education are not allowed on public school vehicles for any non-secular purpose.

Not to leave out the students, the *ibid.* Footnote 14 presents: "...schoolchildren...are members of the body politic and they are equally entitled to be free from government endorsement of religion." Free from "...eye-catching symbolism..." and "..insidious entanglement that flows from state-sponsored proselytizing." (n18).

3

**Justice Souter**: By showing a purpose to favor religion, the government "sends the ... message to ... nonadherents 'that they are outsiders, not full members of the political community, and an accompanying message to adherents that they are insiders, favored members... .' " *Santa Fe Independent School Dist. v. Doe,* 530 U. S. 290, 309-310 (2000) (quoting *Lynch v. Donnelly,* 465 U. S. 668, 688 (1984) (*O'Connor*, J., concurring)).

...*Lemon* requires the secular purpose to be genuine, not a sham, and not merely secondary to a religious objective, see, *e.g., Santa Fe Independent School Dist. v. Doe,* 530 U. S. 290, 308. In those unusual cases where the claim was an apparent sham, or the When the government associates one set of religious beliefs with the state and identifies nonadherents as outsiders, it encroaches upon the individual's decision about whether and how to worship. The purpose behind the counties' display is relevant because it conveys an unmistakable message of endorsement to the reasonable observer. See *Lynch v. Donnelly,* 465 U. S. 668, 690 (1984) (*O'Connor*, J., concurring).

Our cases, Januslike, point in two directions in applying the Establishment Clause. One face looks toward the strong role played by religion and religious traditions throughout our Nation's history. As we observed in *School Dist. of Abington Township v. Schempp,* 374 U. S. 203    The other face looks toward the principle that governmental intervention in religious matters can itself endanger religious freedom.

**Justice Thomas**: Even when this Court's precedents recognize the religious meaning of symbols or words, that recognition fails to respect fully religious belief or disbelief. This Court looks for the meaning to an observer of indeterminate religious affiliation who knows all the facts and circumstances surrounding a challenged display. See, *e.g., Capitol Square Review and Advisory Bd. v. Pinette,* 515 U. S. 753, 780 (1995)

4

(*O'Connor, J.*, concurring) (presuming that a reasonable observer is "aware of the history and context of the community and forum in which the religious display appears"). In looking to the view of this unusually informed observer, this Court inquires whether the sign or display "sends the ancillary message to ... nonadherents 'that they are outsiders, not full members of the political community, and an accompanying message to adherents that they are insiders, favored members of the political community.' " *Santa Fe Independent School Dist.* v. *Doe,* 530 U. S. 290, 309-310 (2000) (quoting *Lynch, supra,* at 688 (*O'Connor, J.*, concurring)).

**Justice Stevens**: In my judgment, at the very least, the Establishment Clause has created a strong presumption against the display of religious symbols on public property. See, *e.g., County of Allegheny* v. *American Civil Liberties Union, Greater Pittsburgh Chapter,* 492 U. S. 573, 650 (1989) (*Stevens, J.,* concurring in part and dissenting in part); *Capitol Square Review and Advisory Bd.* v. *Pinette,* 515 U. S. 753, 797 (1995) (*Stevens, J.,* dissenting). The adornment of our public spaces with displays of religious symbols and messages undoubtedly provides comfort, even inspiration, to many individuals who subscribe to particular faiths. Unfortunately, the practice also runs the risk of "offend[ing] nonmembers of the faith being advertised as well as adherents who consider the particular advertisement disrespectful." *Allegheny County,* 492 U. S., at 651 (*Stevens, J.,* concurring in part and dissenting in part).[3]

Government's obligation to avoid divisiveness and exclusion in the religious sphere is compelled by the Establishment and Free Exercise Clauses, which together erect a wall of separation between church and state.[4] This metaphorical wall protects principles long recognized and often recited in this Court's cases. The first and most fundamental of these

5

principles, one that a majority of this Court today affirms, is that the Establishment Clause demands religious neutrality--government may not exercise a preference for one religious faith over another. See, e.g., *McCreary County* v. *American Civil Liberties Union, Ky., post*, at 27-29.

The fact that a monument: "is installed on public property implies official recognition and reinforcement of its message. That implication is especially strong when the sign stands in front of the seat of government itself. The 'reasonable observer' of any symbol placed unattended in front of any capitol in the world will normally assume that the sovereign--which is not only the owner of that parcel of real estate but also the lawgiver for the surrounding territory--has sponsored and facilitated its message." *Pinette*, 515 U. S., at 801-802 (*Stevens*, J., dissenting).

*Board of Education of Kiryas Joel School District v. Grument, 512 U.S. 687 (1994)*

"...violated the Establishment Clause because it 'singles out a particular religious sect for special treatment' in violation of the principle that 'neutrality as among religions must be honored.'

*Pruneyard Shopping Center v. Robins, 447U.S. 74 (1980).* "Under the U.S. Constitution, states can provide their citizens with broader rights in their constitutions that under the federal Constitution, so long as those rights do not infringe on any federal constitutional rights."

*Hassan v. Leavitt, 10th Cir Court of Appeals, 97-4001.*

"Innumerable cases by the Supreme Court and lower courts have declared the protection of First Amendment rights is fundamental to the essence of our Republic."

*Church of Lukumi Babalu Aye v. City of Hialeah, 508 U.S. 520 (1993).*

6

"In our Establishment Clause cases, we have often stated the principle that the First Amendment forbids an official purpose to disapprove of a particular religion or of religion in general."

"The Free Exercise Clause, like the Establishment Clause, extends beyond facial discrimination. The Clause "forbids subtle departures from neutrality," <u>Gillette v. United States, 401 U.S. 437, 542 (1971)</u>, and "covert suppression of particular religious beliefs," <u>Bowen v. Roy, supra, at 703</u> (opinion of Burger, C.J.). Official action that targets religious conduct for distinctive treatment cannot be shielded by mere compliance with the requirement of facial neutrality. The Free Exercise Clause protects against governmental hostility which is masked as well as overt."

"Accordingly, the cases stating that the Free Exercise *[508 U.S. 520, 561]* Clause requires neutrality are also fairly read for the proposition that the Clause requires general applicability."

"[T]his Court has repeatedly held that indirect coercion or penalties on the free exercise of religion, not just outright prohibition, are subject to [the] scrutiny" employed in *Sherbert v. Verner, 374 U.S. 398 (1963)*

These maintenance vehicles are regularly observed at public schools and traveling throughout the city and School District.

The sunburst/Latin crosses symbol on the maintenance vehicles differs from the modified Zia symbol and building logo the School District uses as its official logo seen on stationary, documents.   (Court-Ordered brief, Doc. 116, Exhibits 2 and 4)

"Today's proponents of the endorsement test all agree that we should attribute to the

7

observer knowledge the cross is a religious symbol..." *Capitol Square Review and Advisory Bd. v. Pinette*, 515 U. S. 753, 780 (1995).

"the Establishment Clause, at the very least, prohibits government from appearing to take a position on questions of religious belief." *492 U.S. at 593-594.*

"Indeed, the Court stated in *Allegheny* that "once the judgment has been made that a particular proclamation of Christian belief, when disseminated from a particular location on government property, had the effect of demonstrating the government's endorsement [*788] of Christian faith, then it necessarily follows that the practice must be enjoined." *492 U.S. at 612.*

"...for example, the Latin cross the Klan sought to erect is the principal symbol [***681] of Christianity around the world, and display of the cross alone could not reasonably be taken to have any secular point."

"The Establishment Clause should be construed to create a strong presumption against the installation of unattended religious symbols on public property."

"Indeed, the Latin cross is identifiable as a symbol of a particular religion, that of Christianity; and, further, as a symbol of particular denominations within Christianity. See *American Civil Liberties Union v. St. Charles, 794 F.2d 265, 271 (CA7 1986)* ("Such a display is not only religious but also sectarian. This is not just because some religious Americans are not Christians. Some Protestant sects still do not display the cross....The Greek Orthodox church uses as its symbol the Greek (equilateral) cross, not the Latin cross....The more sectarian the display, the closer it is to the original targets of the [establishment] clause, so the more strictly is the clause applied").

"But passersby, including schoolchildren, traveling salesmen, and tourists as much as

8

those who live next to the statehouse, are members of the body politic, and they are equally entitled to be free from government endorsement of religion."

2. **SCHOOL DISTRICT POLICY AND PROCEDURES #424**. Policy #424, Religion in the Schools, states: "Las Cruces Public Schools recognizes the separation of church and state and does not sponsor, promote, or endorse religion, but does have the responsibility to teach about religion."

The singular use of 'religion' at the end of the statement in the Policy conveys to any casual reader the message that there is only one religion approved by the School Board, thereby contradicting the rest of the Policy and the Procedures.

Las Cruces Public Schools Procedure #424, Religion in the Schools, paragraph 'C.' Religious Symbols. "Definition: A religious symbol is any object which portrays or represents a religious belief. A religious symbol can also be an object which is so closely associated with religion(s) or with the celebration of a religious holiday that it is commonly perceived as being of a religious nature. Paragraph 'F.' Proselytizing: 1. "…school district staff shall not proselytize…"

### *Doe v. Keystone School District (PA), 2005.*

"Mr. Slagle is…was, acting under color of state law. In his capacity as Board President, he is responsible for, inter alia, ensuring that the school district and its officials and employees act in conformity with the United States Constitution."

*Duffy v. Las Cruces Public Schools, et al. CIV 81-876-JB (1983)*. "In analyzing this matter, it must always be remembered that we are dealing with children attending public schools.

As the Second Circuit Court of Appeals has observed:

> Our nation's elementary and secondary schools play a unique role in transmitting basic and fundamental values to our youth. To an impressionable student, even the mere appearance of secular involvement in religious activities might indicate that the state has placed its imprimatur on a particular religious creed. This symbolic inference is too dangerous to permit.

3. **HISTORY OF USE**. The Las Cruces Public Schools Board of Education has produced no authentic historical documentation indicating three Latin crosses are representative of the history of the village, town, or city of Las Cruces, or the Las Cruces Public Schools.

The historical use of the emblems on the maintenance vehicles was recorded in a deposition as "Hearsay." by the Director, Physical Plant, Ralph Wilson, 3 March 2004.

The town of Las Cruces did not adopt the three free-standing Latin crosses for its city gold-foil seal, drawn by the city attorney, at a city council meeting until 1946 as recorded in the local *Sun-News* newspaper.

The first appearance of the three free-standing Latin crosses in a sunburst associated with the city of Las Cruces was in *The Bulletin* newspaper advertisement on 12 February 1970. (NMSU Newspaper Archives)

Respectfully submitted,

Paul F. Weinbaum
Pro Se Plaintiff
11025 Black Hills Road
Las Cruces, NM 88011-9365
505-522-1910

10

## CERTIFICATE OF MAILING

I certify that a true copy of the foregoing was mailed on this 16th day of November 2006, to:

William R. Babington, Jr.
PO Box 2699
Las Cruces, NM 88004-2699

Paul F. Weinbaum